IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Gordana Schifanelli )
705 Melvin Ave., Ste. 104 )
Annapolis, Maryland 21401 )
)
    PLAINTIFF )
) CIVIL ACTION NO:
v. )
)
Bank of America )
d/b/a Merrill Lynch )
100 North Tryon Street )
Charlotte, North Carolina 28255 )
)
Merrill Lynch & Co., Inc. )
4 World Financial Center )
250 Vesey Street )
New York, NY  10080 )
)
Carol Nevins )
11921 Rockville Pike # 201 )
Rockville, Maryland 20852-2737 )
)
Nilos T Sakellariou )
108 Bellehahn Ct )
Severna Park, MD 21146 )

    DEFENDANTS

**COMPLAINT**

    Plaintiff, Gordana Schifanelli, sues Defendants for defamation and conspiracy to commit defamation in violation of the statutory and common law of the State of Maryland, and for her cause of action states:

1

## Jurisdiction and Venue

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction) as Defendant Bank of America is a North Carolina based corporation, and Defendant Merrill Lynch & Co., Inc. is a New York based corporation. The amount in controversy exceeds the statutory minimum.

2. Venue is proper, as all relevant events occurred in Maryland, Plaintiff and the individual defendants are from from the Maryland area, and all prospective witnesses reside in the Annapolis or Baltimore area. The defamatory act(s) occurred or emanated from Defendant's corporate location in Annapolis, Maryland.

## The Plaintiff

3. Plaintiff Gordana Schifanelli ("Plaintiff") is an adult citizen and resident of the State of Maryland. She holds a Bachelor Degree in Economics and a Master's Degree in Economics & Finance. She is a licensed financial advisor and registered representative holding Series 7 and Series 66 licenses pursuant to various Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") regulations and requirements. She serves from time to time as an adjunct professor at Anne Arundel Community College teaching personal finance.

4. Plaintiff was employed as a financial advisor with Defendant Merrill Lynch & Co. (hereinafter "Merrill") beginning in December, 1999: first at Merrill's Baltimore, Maryland office and then at its Annapolis, Maryland office. She continued employment with Merrill through January 1, 2009, at which point she became a de facto employee of Defendant Bank of America (hereinafter "BoA") pursuant to a completed merger between BoA and Merrill. On February 26, 2009, Plaintiff resigned from BoA after refusing to accept a retention bonus.

5.      Plaintiff, as an advisor and registered representative is, and was at all relevant times, required to maintain a Form U-4 (Uniform Application For Security Industry Registration Or Transfer) with FINRA.

### Defendant Bank of America

6.      Defendant BoA is a corporation doing business throughout the fifty states. BoA provides banking and investment services, including asset management and financial planning, for individual consumers, small and middle market businesses and large corporations. BoA, since its acquisition and merger with Defendant Merrill Lynch, is subject to SEC and FINRA regulations.

### Defendant Merrill Lynch & Company, Inc.

5.      Defendant Merrill Lynch is a "wholly owned subsidiary of Bank of America" doing business throughout the fifty states. Merrill has offices throughout Maryland. Merrill provides investment services, including asset management and financial planning, for individual consumers, small and middle market businesses and large corporations. Merrill is subject to SEC and FINRA regulations.

### Defendant Nilos T. Sakellariou

7.      Nilos T. Sakellariou (hereinafter "Sakellariou") is, and at all relevant times was, a financial advisor previously employed by legacy Merrill Lynch, and since January 1, 2009, by Defendant BoA at its "Merrill Lynch" office located at One Park Plaza, Annapolis, Maryland.

**Defendant Carol Nevins**

8.     Defendant Carol Nevins (hereinafter "Nevins") is, and at all relevant times was, employed by Defendant BoA as Managing Director for its "Merrill Lynch" Metro Maryland Complex. Subsequent to a merger between Merrill Lynch and BoA (completed on or around January 1, 2009) she became the regional supervisor for, among others, Defendant Sakellaiou.

**Background**

9.     Throughout her tenure with defendant corporations, Plaintiff earned a professional reputation with those clients for whom she was responsible as a professional, knowledgeable, and ethical financial advisor. This high regard was shared by her management chain as well as among her contemporaries. Throughout her tenure with Defendants she had no complaints filed against her by clients or customers, no complaints to her employer, and her FINRA U-4 remained blemish free. To the contrary, she maintained excellent rapport with clients, and the majority of these clients came to depend on her candid and professional financial advice. From the outset of her employment, Plaintiff consistently met and often exceeded Defendant Merrill's established goals for financial advisors: production goals, asset gathering goals, and financial planning goals. Plaintiff earned Merrill's professional designation of "Certified Financial Manager" in May, 2003, "Wealth Management Advisor" in 2005, and its "Personal Investment Advisor" designation in 2006. She also received a Four Star Award for the Merrill Lynch Mid-Atlantic Region for excellent customer service in 2007. Furthermore, Plaintiff received two "Executive Club Awards" in 2003 and 2006, and the "President's Club Award" in 2007. During 2007, Plaintiff won the Merrill Lynch "Focus on Growth Award." All these accomplishments were known to be the most challenging for industry standards among financial

advisors, especially in light of the national economic challenges and conditions existing during her tenure. In 2008 she received Reuter's® "Top Advisor" recognition, a ranking of financial advisors in the United States. Her relationship with her designated clients grew stronger over the years and these persons came to rely on her professional training, education and advice. During the recent economic crisis that caused substantial losses to both individual and corporate investors nationally, investment portfolios under Plaintiff's management incurred losses well below that of the national average.

10. Prior to 2007, Merrill was one of the oldest and most reputable financial institutions in the world. As well, Bank of America was perceived as one of the most stable banks, even well into the recent financial and economic troubles. However, in 2007, Merrill's then Chief Executive Officer (CEO) Stan O'Neal publicly reported that Merrill was a well capitalized institution and had very little exposure to mortgage-backed securities and the then nascent credit crises. This was false and Merrill subsequently reported massive losses from investments tied to the depressed real estate market. Stan O'Neal was ousted (along with a multi-million dollar severance) shortly thereafter. He was replaced by CEO John Thain. Merrill losses continued to mount through 2008. Merrill's actions between 2007 and 2008 brought great criticism from the public and its shareholders. Its former prestige suffered immensely amid allegations of excessive compensation, deceit, and unethical behavior by its top management. Merrill's financial advisors came under varying degrees of pressure exerted by its clients as consumer confidence in the company faded.

11. In September, 2008, Bank of America purchased Merrill. When the perceived extent of Merrill's debt surfaced, BoA also became the subject of much criticism by the public and BoA's shareholders. After or shortly before the January 1, 2009, merger was complete, BoA shares dropped to approximately $3.00 per share, nearly qualifying as "penny stock," as consumer confidence in the

organization faded. Its reputation for sound decision making diminished due to the Merrill purchase. Accusations of continued financial waste and abuse on the part of top management of the newly acquired Merrill Lynch, coupled with new estimates of Merrill's actual debt, added to the decrease in confidence in BoA.

12. As an advisor with a fiduciary duty to her designated clients, it became increasingly difficult for Plaintiff to defend the actions of top management at both Merrill and Bank of America in light of the amount of alleged actions of management at legacy Merrill Lynch, the seeming incompetence of the decision makers at Bank of America who had acquired Merrill's staggering debts, subsequent bail outs for the latter, excessive employee bonuses, five-figure toilet seats, etc. Plaintiff felt she could no longer honestly represent either company in front of her existing clients.

13. On or about February 26, 2009, Plaintiff resigned from BoA feeling that she could no longer be associated with either organization in light of the decline of the reputation of both corporations, that she could not properly represent existing or future clients in a fiduciary capacity in light of the financial instability of BoA.

14. Upon learning of Plaintiff's intention to resign, Defendant Carol Nevins attempted to convince the Plaintiff to stay. When unsuccessful, Nevins told Plaintiff that Plaintiff "will regret" and "will pay" for leaving, promising that she would ensure that Plaintiff would not "take any clients" with her. Defendants subsequently engaged in a program of defamation with the objective to adversely affect Plaintiff's career and professional reputation as an ethical and competent financial advisor.

## LEGAL CLAIMS

### Count 1 – Defamation: Libel

15. All allegations of this Complaint are incorporated fully in this Count.

16. On or about March 4, 2009, Defendant Bank of America issued from its "Merrill Lynch" office in Annapolis, Maryland, a letter to one or more of its clients defaming their prior assigned financial advisor, Plaintiff. At least one client (hereinafter "L.C.") – a 9/11 widow - received official correspondence from Bank of America d/b/a Merrill Lynch, indicating that Plaintiff had personally 1) "double charged" client L.C.'s accounts, 2) had charged L.C. management fees that were above "industry practice," and had intentionally caused compensable transactions that should not have incurred fees [Attached hereto as Plaintiff's Exhibit 1, and prayed to be made a part of the record herein]. All of these statements were false and intended to cause contempt on the part L.C. against Plaintiff by accusing Plaintiff of engaging in unethical and unlawful behavior to the detriment of client L.C.

17. All of the allegations were false and at no time did Plaintiff "double charge" any client, engage in churning, or cause unnecessary fees as alleged in Merrill/BoA's official correspondence. Merrill/BoA fees were at all relevant times determined and collected according to fee agreements that conformed to SEC regulations. Fees are disclosed to clients at or prior to an investor contracts with Defendant corporations for financial services. Plaintiff has no control over those fees. The fees are not "negociable" [sic., French variation] and are subject to compliance oversight.

18. Along with the aforementioned written correspondence to L.C., the Defendants - in violation of all relevant SEC and FINRA regulations - manipulated and altered a financial statement of L.C. by issuing her only excerpts and selected pages of the larger 1099 Tax Reporting statement. [Attached hereto as Plaintiff's Exhibit 2, and prayed to be made a part of the record herein].

19. In violation of all relevant SEC and FINRA regulations, Defendant Sakellariou and/or Nivens altered or augmented the original values, calculations, and notes of the monthly financial statement, thereby providing false and misleading information to L.C. [Id.] The purpose of these misrepresentations and violations was to support the false information in the written correspondence and ultimately with the purpose of damaging the professional reputation of the Plaintiff as a financial advisor.

20. Defendant Sakellariou authored the written letter under the direction and guidance of the Regional Director, Defendant Nevins. Defendant Sakellariou and/or Nevins altered the client's financial statement. Both individual Defendants are and were agents of Defendants Bank of America and Merrill Lynch and Company.

21. Defendants Merrill Lynch and BoA approved of the correspondence, or in the alternative failed to monitor the correspondence and supervise its agents through required compliance procedures.

22. These misrepresentations were committed solely in retaliation for Plaintiff's decision to leave Bank of America. Defendants committed these acts willfully, maliciously, and with the knowledge that the facts and assertions were false, thus entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants. No Defendants had any privilege to publish the defamatory statements to a third person.

23. As a result of Defendants' libel and defamation Plaintiff suffered economic damages, severe emotional distress, and loss of professional reputation.

**Count 2 – Defamation per se**

24. All allegations of this Complaint are incorporated fully in this Count.

25.	On or about March 4, 2009, Defendant Bank of America issued from its "Merrill Lynch" office in Annapolis, Maryland, a letter to one or more of its clients defaming their prior assigned financial advisor, Plaintiff.  At least one client (hereinafter "L.C.") – a 9/11 widow - received official correspondence from Bank of America d/b/a Merrill Lynch, indicating that Plaintiff had personally 1) "double charged" client L.C.'s accounts, 2) had charged L.C. management fees that were above "industry practice," and had intentionally caused compensable transactions that should not have incurred fees [Attached hereto as Plaintiff's Exhibit 1, and prayed to be made a part of the record herein].  All of these statements were false and intended to cause contempt on the part L.C. against Plaintiff by accusing Plaintiff of engaging in unethical and unlawful behavior to the detriment of client L.C.

26.	All of the allegations were false and at no time did Plaintiff "double charge" any client, engage in churning, or cause unnecessary fees as alleged in Merrill/BoA's official correspondence. Merrill/BoA fees were at all relevant times determined and collected according to fee agreements that conformed to SEC regulations.  Fees are disclosed to clients at or prior to an investor contracts with Defendant corporations for financial services. Plaintiff has no control over those fees. The fees are not "negociable" [sic., French variation] and are subject to compliance oversight.

27.	Along with the aforementioned written correspondence to L.C., the Defendants - in violation of all relevant SEC and FINRA regulations - manipulated and altered a financial statement of L.C. by issuing her only excerpts and selected pages of the larger 1099 Tax Reporting statement. [Plaintiff's Exhibit 2].

28.	In violation of all relevant SEC and FINRA regulations, Defendant Sakellariou and/or Nivens altered or augmented the original values, calculations, and notes of the monthly financial statement, thereby providing false and misleading information to L.C. [Id.]  The purpose of these

9

misrepresentations and violations was to support the false information in the written correspondence and ultimately with the purpose of damaging the professional reputation of the Plaintiff as a financial advisor.

29. Defendant Sakellariou authored the written letter under the direction and guidance of the Regional Director, Defendant Nevins. Defendant Sakellariou and/or Nevins altered the client's financial statement. Both individual Defendants are and were agents of Defendants Bank of America and Merrill Lynch and Company.

30. Defendants Merrill Lynch and BoA approved of the correspondence, or in the alternative failed to monitor the correspondence and supervise its agents through required compliance procedures.

31. These misrepresentations were committed solely in retaliation for Plaintiff's decision to leave Bank of America. Defendants committed these acts willfully, maliciously, and with the knowledge that the facts and assertions were false, thus entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants. No Defendants had any privilege to publish the defamatory statements to a third person.

32. As a result of Defendants' libel and defamation, Plaintiff suffered economic damages, severe emotional distress, and loss of professional reputation.

### Count 3 - Civil Conspiracy to Defame

33. All allegations of this Complaint are incorporated fully in this Count.

34. On or about March 4, 2009, Defendants conspired and engaged in defamation by sending written correspondence to L.C. indicating that Plaintiff had personally 1) "double charged" L.C.'s accounts, 2) had charged L.C. management fees that were above "industry standards," and had

intentionally caused compensable transactions that should not have incurred fees [Plaintiff's Exhibit 1]. All of these statements were false and intended to cause contempt on the part L.C. against Plaintiff by accusing Plaintiff of engaging in unethical and unlawful behavior to the detriment of client L.C.

35. Along with the aforementioned written correspondence to L.C., the Defendants - in violation of all relevant SEC and FINRA regulations - manipulated and altered the a financial statement of client L.C. by issuing to her only excerpts and selected pages of the larger statement. [Plaintiff's Exhibit 2].

36. In violation of all relevant SEC and FINRA regulations, Defendant Sakellariou and/or Nivens altered or augmented the original values, calculations, and notes of the monthly financial statement, thereby providing false and misleading information to L.C. [Id.]  The purpose of these misrepresentations and violations was to support the false information in the written correspondence and ultimately with the purpose of damaging the professional reputation of the Plaintiff as a financial advisor.

37. Defendants Nilos and Nevins conspired by agreement to use their position and the assets of Defendants BoA Merrill to defame Plaintiff's professional reputation and in retaliation for Plaintiff's decision to resign from BoA.  Defendants BoA and Merrill failed to monitor the actions of its agents through effective compliance measures.  No Defendants had any privilege to publish the defamatory statements to a third person.

38. As a result of Defendants' defamation Plaintiff suffered economic damages, severe emotional distress, and loss of professional reputation per se.

## DAMAGES

39.As a direct, foreseeable, and proximate result of Defendants' actions Plaintiff has incurred economic damages, severe emotional distress, and loss of professional reputation.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

1.Enter judgment against defendants for general damages in the amount of $1,500,000;

2.Enter judgment against defendants for compensatory and punitive damages in the amount of $1,500,000;

3.Award Plaintiff reasonable attorney's fees and costs of suit;

4.Such other and further relief as the Court deems just and proper.

_____
DateMarc D. Schifanelli
705 Melvin Ave., Ste. 104
Annapolis, Maryland 21401
phone:410-263-0028
fax:   626-605-2258
Bar No.:  27753